**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **KIMBERLY H. [1],** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 22-cv-00417 (GMH)** |
| | ) | |
| **KILOLO KIJAKAZI, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**<u>MEMORANDUM OPINION</u>**

Plaintiff Kimberly H. filed this action seeking to reverse the final decision of the Acting Commissioner of Social Security, Kilolo Kijakazi ("Defendant" or "the Commissioner"), denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under Title II and XVI of the Social Security Act, 42 U.S.C. §§ 405(g), 1382(c)(3). Plaintiff claims that the Administrative Law Judge ("ALJ") who handled her claim failed to consider whether he was bound by res judicata by a prior ALJ's decision. And even if not bound by res judicata, Plaintiff argues that the ALJ erred by failing to consider the prior ALJ's decision in making findings that contradicted those of the prior ALJ. Plaintiff also asserts that the ALJ erred by not including any limitations related to Plaintiff's mental health impairments in her RFC, by finding her mental health impairments not to be severe, and by failing to provide a narrative discussion of Plaintiff's abilities in determining her RFC. The Commissioner argues that the ALJ

---

[1] Plaintiff's name has been partially redacted in accordance with the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum from Hon. Wm. Terrell Hodges, Chair, Comm. on Ct. Admin. & Case Mgmt. to Chief Judges of the U.S. Cts. of Appeals, Chief Judges of the U.S. Dist. Cts., Clerks of the U.S. Cts. of Appeals, and Clerks of the U.S. Dist. Cts. (May 1, 2018), https://perma.cc/N9T2-U5XG.

committed no error and the ALJ's decision is supported by substantial evidence. Upon consideration of the parties' briefs and the administrative record, the Court denies Defendant's motion for affirmance and Plaintiff's motion to the extent that it seeks reversal, but grants Plaintiff's motion to the extent that it seeks remand to the Social Security Administration ("SSA") for further proceedings.[2]

## I.       BACKGROUND

### A.       Legal Framework

To be eligible for DIB and SSI benefits under the Social Security Act, the SSA must find a claimant to be "disabled," meaning that the individual is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To make that determination, an ALJ gathers evidence, holds a hearing, takes testimony, and performs the following five-step, sequential inquiry of the disability claim:

Step one:  whether the claimant is engaging in "substantial gainful activity";[3]

Step two:  whether the claimant has a "severe" medically-determinable physical or mental impairment or combination of impairments;[4]

---

[2] The relevant docket entries for purposes of this Memorandum Opinion are: (1) the administrative record (ECF No. 9 and its attachments), (2) Plaintiff's motion for judgment of reversal (ECF No. 15-1), (3) Defendant's motion for judgment of affirmance and opposition to Plaintiff's motion for judgment of reversal (ECF No. 16), and (4) Plaintiff's combined opposition to Defendant's motion for judgment of affirmance and reply to Defendant's opposition (ECF No. 18). The page numbers cited herein are those assigned by the Court's CM/ECF system.

[3] "Substantial gainful activity" is work that "involves doing significant and productive physical or mental duties" and is "done (or intended) for pay or profit." 20 C.F.R. § 416.910; *see also* 20 C.F.R. § 404.1510 (defining "substantial gainful activity" for the purposes of DIB). "If [the claimant is] doing substantial gainful activity, [the Social Security Administration] will find that [the claimant is] not disabled." 20 C.F.R. § 416.920(a)(4)(i); *see also* 20 C.F.R. § 404.1520(a)(4)(i) (defining the step one inquiry for DIB claims).

[4] An impairment or combination of impairments is "severe" if it "significantly limit[s]" a claimant's "physical or mental ability to do basic work activities," such as "walking, standing, sitting, lifting, pushing, pulling, reaching,

Step three:  whether the claimant's impairment is equivalent to one of the disabling impairments listed in the appendix of the relevant regulation, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings");

If the ALJ moves past step three, then the ALJ determines the claimant's residual functional capacity ("RFC")—i.e., the most he or she is able to do notwithstanding his or her physical and mental limitations;

Step four:  whether the impairment prevents the claimant from performing his or her past relevant work;[5] and

Step five:  whether the claimant, in light of his or her age, education, work experience, and RFC, is unable to perform another job available in the national economy.[6]

*See* 20 C.F.R. § 416.920; *see also* 20 C.F.R. § 404.1520 (outlining the five-step sequential inquiry for DIB claims); *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004).  "An affirmative answer to question 1 or negative answers to questions 2 or 4 result in a determination of no disability. Affirmative answers to questions 3 or 5 establish disability."  *Hines v. Bowen*, 872 F.2d 56, 58 (4th Cir. 1989).

The claimant bears the burden of proof at the first four steps of the evaluation. *Callahan v. Astrue*, 786 F. Supp. 2d 87, 89 (D.D.C. 2011).  At step five, the burden shifts to the Commissioner to identify specific jobs available in the national economy the claimant can perform. *Id.*  In

---

carrying, or handling"; "seeing, hearing, [or] speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; exercising judgment; "[r]esponding appropriately to supervision, co-workers[,] and usual work situations"; or "[d]ealing with changes in a routine work setting."  20 C.F.R. § 416.922; *see also* 20 C.F.R. § 404.1522 (defining a severe impairment for the purposes of DIB claims).

[5] "Past relevant work" is work "done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it."  20 C.F.R. § 416.960(b)(1); *see also* 20 C.F.R. § 404.1560(b)(1) (defining "past relevant work" for the purposes of DIB claims).  If the claimant can perform his or her past relevant work, a finding of "not disabled" is required.  20 C.F.R. § 416.920(a)(4)(iv); *see also* 20 C.F.R. § 404.1520(a)(4)(iv) (defining the step four inquiry for DIB claims).

[6] At the fifth step, the ALJ may, "'[i]n the ordinary case, . . . resort[ ] to the applicable medical vocational guidelines'" (also known as "the Grids") to determine whether the claimant is disabled.  *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2.  "The grids 'take[ ] into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience.'"  *Id.* (alteration in original) (quoting *Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996)). However, when a claimant has additional limitations beyond those contemplated by the Grids, the ALJ cannot rely on the Grids alone to establish nondisability.  *Id.*  In such cases, the testimony of a vocational expert ("VE") is required. *Smith v. Bowen*, 826 F.2d 1120, 1122 (D.C. Cir. 1987).

making this determination, an ALJ may call a vocational expert to testify at the hearing as to whether, based on the claimant's RFC, he or she can perform other work that exists in the national economy.[7]  *Id.* at 90.

**B.      Plaintiff's Disability Claims, Procedural History, and the Administrative Hearings**

Plaintiff is 58 years old and recently completed a Master of Business Administration degree at Georgetown University.  ECF No. 9-2 at 45.  Before applying for DIB and SSI benefits, she worked in various roles, including as a legal clerk, executive assistant, legal assistant, special education investigator, administrative clerk, and the owner of an online shoe store that she started. ECF No. 9-6 at 4; ECF No. 9-2 at 49.  She stopped working on May 1, 2014, due to her alleged disability.  ECF No. 9-2 at 17.

1.      Plaintiff's 2015 Claims and ALJ Emerson's Opinion

Plaintiff first filed for DIB and SSI benefits in 2015, claiming that she became disabled on May 1, 2014.  ECF No. 9-3 at 5.  Plaintiff asserted a variety of impairments that prevented her from being able to work.  *Id.* at 8.  These included Post Traumatic Stress Disorder (PTSD) and major depressive disorder, as well as obesity, hypertension, sleep apnea, hyperlipidemia, a gastric polyp, hiatal hernia, and fibroids.  ECF No. 9-3 at 7.  Plaintiff's applications were denied initially and on reconsideration.  ECF No. 9-3 at 5.  Plaintiff then requested a hearing in front of an ALJ, which occurred in front of ALJ Andrew Emerson on March 19, 2018.  *Id.*  At the hearing, Plaintiff and a VE testified.  *Id.*

---

[7] In determining whether "unskilled, sedentary, light, and medium jobs exist in the national economy" that a claimant can perform, a VE may rely on the Dictionary of Occupational Titles, 20 C.F.R. § 404.1566(d)(1), which "provides a brief description of occupations within the national economy and lists the capabilities that each occupation requires of a worker."  *Callahan v. Astrue*, 786 F. Supp. 2d 87, 90 (D.D.C. 2011).

On June 7, 2018, ALJ Emerson issued a decision denying Plaintiff's applications. *Id.* at 16. At step one, ALJ Emerson found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of May 1, 2014. *Id.* at 7. At step two, ALJ Emerson concluded that Plaintiff's PTSD, major depressive disorder, and obesity were severe impairments. *Id.* However, at step three, ALJ Emerson determined that none of her impairments satisfied any of the Listings. *Id.* at 8. ALJ Emerson thus proceeded to determine Plaintiff's RFC. He found that Plaintiff could perform light work but could only "occasionally climb ramps or stairs, never climb ladders ropes or scaffolds," and could only "occasionally balance, kneel, stoop, crouch, or crawl." *Id.* at 10. Further, he found Plaintiff "must avoid concentrated exposure to extr[e]me heat, wetness, excessive vibration, and hazards such as moving machinery and unprotected heights." *Id.* Finally, he determined that Plaintiff could perform only "simple routine repetitive tasks in a low stress work environment[ ] with no strict production quotas and c[ould] only occasionally interact with the public, coworkers, and supervisors." *Id.*

Based on that RFC, ALJ Emerson found at step four that Plaintiff was incapable of performing any of her past relevant work. *Id.* at 14. This finding was based on the VE's testimony that someone with Plaintiff's limitations on social interaction and the ability to perform only simple, routine tasks in a low stress environment could not perform any of Plaintiff's previous work—all of which was skilled. *Id.* Finally, at step five, ALJ Emerson concluded that given Plaintiff's age (under 55 at the time), education, and experience, Plaintiff could perform other work available in the economy, such as a "Sorter," "Office Helper," or "Inspector Packer"—all unskilled positions. *Id.* at 15. Because Plaintiff could perform other work available in the national economy, ALJ Emerson concluded that Plaintiff was not disabled. *Id.* Thus, he denied Plaintiff's DIB and SSI claims. *Id.*

The Appeals Council denied Plaintiff's request to review ALJ Emerson's decision.  ECF No. 9-3 at 22.  Plaintiff appealed ALJ Emerson's decision to this Court.  Judge Faruqui found that ALJ Emerson's decision was supported by substantial evidence.  *Harris v. Comm'r of Soc. Sec.*, No. 18-cv-2451, 2021 WL 3507684, at *7 (D.D.C. Apr. 15, 2021).  And Chief Judge Boasberg adopted those findings and affirmed ALJ Emerson's decision on April 30, 2021.  *Harris v. Comm'r of Soc. Sec.*, No. 18-cv-2451, 2021 WL 7448011 (D.D.C. Apr. 31, 2021).

2.    Plaintiff's 2019 Claims and ALJ Ayer's Opinion

Plaintiff filed a second claim for DIB and SSI benefits on September 5, 2019.  ECF No. 9-3 at 38, 50.  The 2019 claims form the basis for the motions currently pending before the Court.  Plaintiff asserted that she suffered from PTSD, major depressive disorder, and anxiety.  *Id.*  She was also found to have obesity and osteoarthritis of both her knees and left hip.  ECF No. 9-2 at 20.  These claims were again denied initially on December 11, 2019, ECF No. 9-3 at 49, 61, and on reconsideration on April 10, 2020, *id.* at 74, 85.  And Plaintiff again requested a hearing before an ALJ.  ECF No. 9-2 at 17.  This hearing was held by ALJ F. H. Ayer on March 10, 2021.  *Id.*  Plaintiff argued at the March 10, 2021 hearing that "the starting point" for ALJ Ayer's decision should be ALJ Emerson's findings.  ECF No. 9-2 at 44.  And Plaintiff pointed out that under the RFC determined by ALJ Emerson, Plaintiff would be disabled under the Medical-Vocational Guidelines as of her 55th birthday, June 11, 2020.  *Id.*; ECF No. 9-5 at 7.  ALJ Ayer accepted ALJ Emerson's decision into evidence as Exhibit B1A.  ECF No. 9-2 at 31, 43.  And ALJ Ayer con-cluded that because ALJ Emerson's opinion was dated June 7, 2018, he would consider only whether Plaintiff was disabled on or after June 8, 2018, the day after ALJ Emerson's decision.  ECF No. 9-2 at 42.

Both Plaintiff and a VE testified at the hearing.  *Id.* at 38.  ALJ Ayer asked the VE whether a person with Plaintiff's education and past work experience who was limited to light work and

could only "occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds, could stand and walk about six hours in an eight hour work day, could sit about six hours in an eight hour work day, could occasionally climb ramps and stairs, balance[,] stoop, kneel[,] crouch, and crawl, and never climb ladders, ropes and scaffolds," could perform any of Plaintiff's past work. *Id.* at 50. The VE answered that someone with those limitations could perform all of Plaintiff's past work. *Id.* at 51.

ALJ Ayer next asked whether someone with those limitations who also "had to avoid concentrated exposure to extreme heat, wetness, vibration, and hazards such as machinery, heights, and things of that nature," could perform Plaintiff's past work. *Id.* The VE again testified that someone with those limitations could perform all of Plaintiff's past work, except for Plaintiff's past job as an investigator. *Id.* And ALJ Ayer asked if someone with all of the above limitations who had to alternate between sitting and standing every 30 minutes could perform Plaintiff's past work (minus the investigator job), to which the VE again responded that they could. *Id.* at 51–52.

ALJ Ayer then asked whether someone with all of the above limitations who could only "perform[ ] simple one to four step routine repetitive tasks in a low stress work environment defined as requiring only occasional decision-making and occasional changes in the work setting where there would only be occasional contact with coworkers, supervisors, and the general public and which would not require a fast pace or production quotas such as would customarily be found on an assembly line," could perform any of Plaintiff's past work. *Id.* at 53. In response to these limitations, the VE testified that such limitations would restrict a person to unskilled work only and that none of Plaintiff's past work would be available to such a person. *Id.*

ALJ Ayer issued his decision on June 16, 2021, denying Plaintiff's DIB and SSI claims. ECF No. 9-2 at 29–30. At step one, ALJ Ayer, like ALJ Emerson, found that Plaintiff had not

engaged in substantial gainful activity since May 1, 2014. *Id.* at 20. At step two, ALJ Ayer found Plaintiff's obesity and arthritis of both knees and left hip were severe impairments. *Id.* at 20. But unlike ALJ Emerson, he concluded that Plaintiff's PTSD and major depressive disorder were not severe impairments. *Id.* at 20–23. In making this determination, ALJ Ayer considered Plaintiff's daily activities and mental status evaluations performed by her primary care providers between January 2018 and February 2021, including evaluations from January, March, April, and June 4, 2018, that predated ALJ Emerson's decision of June 7, 2018. *Id.* at 21–22. ALJ Ayer summarized Plaintiff's mental health impairments, finding that there were "no significant vocationally relevant limitations demonstrated throughout the record." *Id.* at 20.

At step three, ALJ Ayer found that none of Plaintiff's impairments satisfied any of the Listings. *Id.* at 23. ALJ Ayer next determined Plaintiff's RFC "for the period from June 8, 2018, the day after the prior unfavorable decision," through the date of his own decision (June 16, 2021). *Id.* at 24, 30. He, similar to ALJ Emerson, found that Plaintiff was restricted to light work but could only

> occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about six hours in an eight-hour workday, sit for a total of about six hours in an eight-hour workday, occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, and never climb ladders, ropes and scaffolds.

*Id.* at 24–25. And like ALJ Emerson, ALJ Ayer determined that Plaintiff "must avoid concentrated exposure to extreme heat, wetness, vibration and hazards (machinery, heights, etc.)." *Id.* at 25. ALJ Ayer further found that Plaintiff "requires the ability to alternate between sitting and standing about every 30 minutes such that sitting would total about four hours and standing and/or walking would total about four hours in an eight-hour workday." *Id.* But unlike ALJ Emerson, ALJ Ayer did not include any limitations related to Plaintiff's mental health impairments in her RFC. *Compare id.*, *with* ECF 9-3 at 10 (ALJ Emerson's finding that Plaintiff could perform only "simple

routine repetitive tasks in a low stress work environment[ ] with no strict production quotas," and could "only occasionally interact with the public, coworkers, and supervisors").

Based on this new RFC, ALJ Ayer found at step four that Plaintiff could perform her past work as an "administrative clerk," a semi-skilled job that Plaintiff performed from 2011 to 2012. *Id.* at 29. Because Plaintiff could perform her past relevant work as an administrative clerk, ALJ Ayer concluded that Plaintiff was not disabled. *Id.* ALJ Ayer did not mention or address ALJ Emerson's findings in his decision. The Appeals Council denied review of ALJ Ayer's decision. ECF No. 9-2 at 2. Plaintiff again appealed to this Court.

## II.     LEGAL STANDARD

A federal district court has jurisdiction over a civil case challenging a final decision of the Commissioner. 42 U.S.C. § 405(g). A reviewing court must affirm the Commissioner's decision if it is based on substantial evidence in the record and the correct application of the relevant legal standards. *Id.*; *Butler*, 353 F.3d at 999. "[T]he plaintiff bears the burden of demonstrating that the Commissioner's decision is not based on substantial evidence or that incorrect legal standards were applied." *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 64 (D.D.C. 2006).

"The substantial evidence standard requires considerable deference to the decision rendered by the ALJ." *Crosson v. Shalala*, 907 F. Supp. 1, 3 (D.D.C. 1995). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, __ U.S. __, __, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It requires "more than a scintilla [of evidence] but can be satisfied by something less than a preponderance of the evidence." *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365-66 (D.C. Cir. 2003) (quoting *FPL Energy Me. Hydro LLC v. FERC*, 287 F.3d 1151, 1160 (D.C. Cir. 2002)). The reviewing court may neither reweigh the evidence presented to it nor replace the Commissioner's judgment "concerning the

credibility of the evidence with its own." *Crosson v. Shalala*, 907 F. Supp. 1, 3 (D.D.C. 1995); *see also Butler*, 353 F.3d at 999.

That said, "this standard of review 'calls for careful scrutiny of the entire record,' to determine whether the Commissioner, acting through the ALJ, 'has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits[.]'" *Lane-Rauth*, 437 F. Supp. 2d at 65 (alteration original) (quoting Butler, 353 F.3d at 999)); *accord Pinkney v. Astrue*, 675 F. Supp. 2d 9, 14 (D.D.C. 2009). "Therefore, an agency cannot ignore evidence that undercuts its judgment; and it may not minimize such evidence without adequate explanation." *Genuine Parts Co. v. EPA*, 890 F.3d 304, 312 (D.C. Cir. 2018); *see also Brown v. Bowen*, 794 F.2d 703, 709 (D.C. Cir. 1986) ("The judiciary can scarcely perform its assigned review function, limited though it is, without some indication not only of what evidence was credited, but also whether other evidence was rejected rather than simply ignored.").

Moreover, the Court's job is to "consider the grounds actually proffered by the ALJ" rather than to make those determinations for itself, *Ward v. Berryhill*, 246 F. Supp 12. 3d 202, 210 (D.D.C. 2017), or credit "post-hoc rationalization[s]" advanced by the parties, *Cooper v. Berryhill*, No. 16-cv-1671, 2017 WL 4326388, at *5 (D.D.C. Sept. 28, 2017). *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (A reviewing court "must judge the propriety of [an agency's judgment] solely by the grounds invoked by the agency."). Finally, courts "must also be mindful of the harmless-error rule. Consequently, even if [the court] perceive[s] error," it must "affirm the Commissioner's decision unless the error is prejudicial." *Saunders v. Kijakazi*, 6 F.4th 1, 4 (D.C. Cir. 2021).

### III.    DISCUSSION

Plaintiff raises four issues with ALJ Ayer's decision. First, Plaintiff argues that ALJ Ayer's failure to consider or mention ALJ Emerson's previous findings was error, either because ALJ

Ayer "failed to address or consider the application of the doctrine of res judicata," ECF No. 15-1 at 7, or because ALJ Ayer "failed to adequately address" his departure from ALJ Emerson's findings, depriving ALJ Ayer's decision of support from substantial evidence, ECF No. 18 at 3.  Second, Plaintiff claims that ALJ Ayer "failed to set forth a narrative discussion setting forth how the evidence supported *each* conclusion" in determining Plaintiff's RFC.  ECF No. 15-1 at 10.  Third, Plaintiff argues that ALJ Ayer failed to consider Plaintiff's mental health impairments in determining Plaintiff's RFC.  ECF No. 15-1 at 13.  Fourth and finally, Plaintiff contends that ALJ Ayer failed to consider evidence of the severity of Plaintiff's mental health impairments—chiefly, Plaintiff's self-reported symptoms and her treating doctor's observations—and thus the decision lacks the support of substantial evidence.  ECF No. 15-1 at 14–18.  The Commissioner variously denies such errors and argues that ALJ Ayer's decision was supported by substantial evidence.  *See generally* ECF No. 16.

Because the Court finds that the first error raised by Plaintiff is sufficient to resolve this case and moot Plaintiff's remaining claims,[8] the Court will remand on that basis.

### A.    ALJ Ayer Was Not Bound by Res Judicata or Issue Preclusion.

Plaintiff first claims that ALJ Ayer erred by failing to "consider application of the doctrine of res judicata" to ALJ Emerson's findings.  ECF No. 15-1 at 7.  Plaintiff appears to be referring specifically to issue preclusion.  *See id.*[9]  ALJ Ayer erred, Plaintiff asserts, by failing to consider

---

[8] Plaintiff's remaining claims challenge ALJ Ayer's analysis at steps two through four.  However, on remand the ALJ's analysis at those steps may be different than ALJ Ayer's original decision as a result of the Court's resolution of the first issue Plaintiff raises.  Thus, addressing the remaining issues raised by Plaintiff is unnecessary because those issues may not arise in the next ALJ's decision.  The Court takes no position on the merit of Plaintiff's remaining claims.

[9] Res judicata is "a term that now comprises two distinct doctrines regarding the preclusive effect of prior litigation." *Lucky Brand Dungarees, Inc. v. Marcel Fashion Grp.*, __ U.S. __, __, 140 S. Ct. 1589, 1594 (2020).  Claim preclusion bars the relitigation of the "same claim as an earlier suit between the same parties," while issue preclusion "precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment." *Id.*  It is unnecessary to go into the intricacies of both doctrines here, as Plaintiff's argument stumbles at the threshold.

whether he could determine the severity of Plaintiff's mental health impairments, her RFC, and her ability to perform past work, or whether he instead must find ALJ Emerson's findings on those points "preclusive." *Id*. This argument—as the Commissioner points out, ECF No. 16 at 12–13, and Plaintiff appears to concede in her reply, ECF No. 18 at 3—lacks merit. While issue preclusion can apply in administrative adjudications, it does not apply here because ALJ Ayer adjudicated a different issue—Plaintiff's disability status on and after June 8, 2018, ECF No. 9-2 at 24—from what ALJ Emerson had finally determined—Plaintiff's disability status before June 8, 2018, ECF No. 9-3 at 16.

The doctrine of issue preclusion "refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment." *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001). The Social Security Act provides that "[t]he findings and decisions of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing." 42 U.S.C. § 405(h). And this Court has recognized that "Section 405(h) embodies the fundamental principles of *res judicata*, which limits the relitigation of matters already decided." *Clark v. Colvin*, 187 F. Supp. 3d 76, 77 (D.D.C. 2016). But, as discussed below, because issue preclusion precludes only the "relitigation of matters *already decided*," *id.* (emphasis added), it "rarely would apply in this setting," *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 933 (6th Cir. 2018).

A necessary predicate for issue preclusion to apply is that the issue being raised in the second case is "the same issue" that was previously decided. *B&B Hardware, Inc. v. Hargis Indus.*, 575 U.S. 138, 157 (2015). "As Judge Posner wrote in *Groves*, '[r]es judicata bars attempts to relitigate the same claim, but a claim that one became disabled in 1990 is not the same as a claim one became disabled in 1994.'" *Clark*, 187 F. Supp. 3d at 83 (alteration in original) (quoting

*Groves v. Apfel*, 148 F.3d 809, 810 (7th Cir. 1998)).  Likewise, under issue preclusion, "there is no necessary inconsistency in finding an applicant not disabled at time *t* but disabled at *t*+1." *Groves*, 148 F.3d at 810.  That's because a claimant's disability at time *t* is a different issue from their disability at time *t*+1.  *Id*.  Thus, adjudication of the former has no preclusive effect on the latter.  *Id.*; *Rucker v. Chater*, 92 F.3d 492, 495 (7th Cir. 1996).

In other words, when one ALJ has determined that a claimant was or was not disabled during a certain time period, a subsequent ALJ may be precluded from "relitigating" the claimant's disability during that *same* time period.  *Clark*, 187 F. Supp. 3d at 78.  But the later ALJ would not be precluded from determining the separate issue of the claimant's disability during a *different*, previously unadjudicated, time period.  *Groves*, 148 F.3d at 810; *Rucker*, 92 F.3d at 495.  There is no "relitigation," *Clark*, 187 F. Supp. 3d at 77, in the latter case because "[a]ny earlier proceeding that found or rejected the onset of a disability could rarely, if ever, have 'actually litigated and resolved' whether a person was disabled at some later date," *Earley*, 893 F.3d at 933 (quoting *New Hampshire*, 532 U.S. at 748–49).  After all, human health "is subject to change with the passage of time," *Clark*, 187 F. Supp. 3d. at 83—sometimes for the better, often for the worse.

Here, ALJ Ayer was not bound by "res judicata," ECF No. 15-1 at 7, or issue preclusion. ALJ Ayer considered and adjudicated Plaintiff's disability status from June 8, 2018, to the date he issued his decision, June 16, 2021.  ECF No. 9-2 at 14, 24.  ALJ Emerson only "actually litigated and resolved" Plaintiff's disability status from May 1, 2014, to June 7, 2018.  *New Hampshire*, 532 U.S. at 748–49; ECF No. 9-3 at 2–5.  The two ALJs thus adjudicated different time periods— that is, they "actually litigated and resolved" different issues.  *New Hampshire*, 532 U.S. at 748– 49; *see B&B Hardware*, 575 U.S. at 156–57.  Issue preclusion therefore does not apply.  *See B&B Hardware*, 575 U.S. at 156–57.

Put differently, among the issues decided by ALJ Emerson were whether Plaintiff's mental health impairments were severe, how those impairments affected her RFC, and whether she could perform past work *on or before* June 7, 2018. ECF No. 9-3 at 15–16. But the issues before ALJ Ayer were whether Plaintiff's mental health impairments were severe, how those impairments affected her RFC, and whether she could perform past work *after* June 7, 2018. ECF No. 9-2 at 24. While these are very *similar* issues—the same attributes of the same claimant separated by a single day—that day of separation makes all the difference in the issue preclusion context. Those are not "the same issue[s]," *B&B Hardware*, 575 U.S. at 157, because Plaintiff might not have been disabled on June 7, but very well may have become disabled later—perhaps, although unlikely, the very next day. *See Groves*, 148 F.3d at 810; *Rucker*, 92 F.3d at 495. Thus, ALJ Emerson's decision could have no preclusive effect on ALJ Ayer's consideration of Plaintiff's disability during a different time period.

It may be helpful to note that in the mine run of cases, issue preclusion's inapplicability works in claimants' favor. Claimants, like Plaintiff here, are permitted to reapply after being denied benefits in their first application. *See Earley*, 893 F.3d at 932. But "[m]ost applicants reapply only because the Administration found them not to be disabled." *Id.* at 934. If the ALJ in their next application were bound by the prior ALJ's findings, then the result would be the same the second time around. *Id.*; *Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 476–77 (4th Cir. 1999). Here, for example, were the Court to give rigid preclusive effect to ALJ Emerson's findings even though the two ALJs decided different issues that were likely to change over time, the Commissioner could then argue that Plaintiff is equally precluded from contesting ALJ Emerson's determination that she was capable of work available in the economy—i.e., not disabled. ECF No. 9-3 at 14; *see Earley*, 893 F.3d at 934; *Albright*, 174 F.3d at 476–77. This may be true

even though Plaintiff turned 55—"advanced age" under 20 C.F.R. § 404.1563(e)—between the two adjudications. *See* ECF No. 9-3 at 14. Age, no less than disability status, "is subject to change with the passage of time." *Clark*, 187 F. Supp. 3d. at 83.

> **B.   ALJ Ayer Failed to Adequately Consider and Address ALJ Emerson's Prior Decision.**

Venturing beyond the bright-line rules of civil procedure, Plaintiff next argues that ALJ Ayer "failed to provide any explanation to support his substantial change in findings beginning a single day after the previous decision was issued." ECF No. 15-1 at 7. Because of this, Plaintiff contends that ALJ Ayer's "decision fails to be supported by substantial evidence." ECF No. 18 at 4. Specifically, ALJ Emerson found that as of June 7, 2018, (1) Plaintiff's mental health impairments were severe, (2) her mental health impairments limited her RFC, and (3) she could not perform past relevant work. ECF 9-3 at 7–14. ALJ Ayer found that as of June 8, 2018, (1) Plaintiff's mental health impairments were *not* severe, (2) her mental health impairments did *not* limit her RFC, and (3) she *could* perform past relevant work. ECF 9-2 at 20–29. ALJ Ayer did not acknowledge or explain this change in the Commissioner's position. This was no error, the Commissioner responds, because ALJ Ayer "was not required to articulate the difference between the prior ALJ decision and the current finding." ECF No. 16 at 16. And as the Commissioner points out, no case in this Circuit—at least that the Court or parties have been able to find—directly addresses Plaintiff's argument. *See id.*

Instead, Plaintiff points to our sister circuit's decision in *Lively v. Secretary of Health and Human Services*, 820 F.2d 1391 (4th Cir. 1987). ECF No. 18 at 3. In *Lively*, an ALJ found that Lively, the claimant, had the RFC for light work as of October 19, 1981, and denied Lively benefits under the Medical-Vocational Guidelines for individuals under the age of 55. 820 F.2d at 1391–92. The district court reviewed that finding and determined it was supported by substantial

evidence.  *Id.* at 1392 n.*.  Two weeks after the ALJ denied his application, Lively turned 55.  *Id.* at 1392.  This rendered him disabled under those same Medical-Vocational Guidelines if restricted to light work.  *Id.*  Lively thus reapplied for benefits in 1983.  *Id.*  But the ALJ in his second claim denied his application because the ALJ, "without discussion of the 1981 finding that [Lively] was limited to light work, found that [he] retained the functional capacity for the performance of" his past medium level work "on and prior to December 31, 1981," when his insured status expired. *Id.*  Citing "principles of *res judicata*," "finality[,] and fundamental fairness drawn from § 405(h)," the Fourth Circuit found it "utterly inconceivable that [Lively's] condition had so improved in two weeks as to enable him to perform medium work."  *Id.*  The Fourth Circuit therefore reversed, ordering that Lively be awarded benefits.  *Id.*

Notably, the Fourth Circuit later clarified *Lively*.  "Rather than signaling a sea change in the law of preclusion," the court explained, "*Lively* is instead best understood as a practical illustration of the substantial evidence rule."  *Albright*, 174 F.3d at 477.  *Albright* explained that *Lively* was "a heavily fact-dependent case" that "determined that the finding of a qualified and disinterested tribunal that Lively was capable of performing only light work as of a certain date was such an important and probative fact as to render the subsequent finding to the contrary unsupported by substantial evidence."  *Id.* at 477–78.  This was supported by the principle that "final agency adjudications should carry considerable weight" and the reality that "judicial ratification of the SSA's 'bait-and-switch' approach to resolving Lively's claim would have produced a result reasonably perceived as unjust and fundamentally unfair."  *Id.* at 478.  Finally, the Fourth Circuit cautioned that while there is "some assurance that a claimant's condition very likely remains unchanged within a discrete two-week period, [the court] would grow ever less confident as the time frame expands."  *Id.* at 477.

The Sixth Circuit has followed a path similar to the Fourth Circuit's.  In *Drummond v. Commissioner of Social Security*, the Sixth Circuit was confronted with a case like *Lively*.  126 F.3d 837, 842 (6th Cir. 1997).  Citing *Lively*, the Sixth Circuit held that "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." *Id.*  Then, in *Earley*—a case where that strict rule of preclusion was used to *deny* a plaintiff's claim—the court, now citing *Albright*, rejected that strict rule.  893 F.3d at 934.  Instead, the court explained that "absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application." *Id.* at 933.  But the court also rejected the Commissioner's request that ALJs be allowed to "completely ignore earlier findings." *Id.*  at 934.  The "outcome" in *Drummond* was correct because "[f]resh review is not blind review." *Id.* (emphasis omitted).

The Third Circuit has taken a different tack.  In a non-precedential opinion, that court recently declined to adopt *Albright* because in its view "nothing in the [SSA's] regulations compels adoption or even consideration of a prior-found fact by an ALJ who decided a temporally distinct disability claim." *Mattei v. Comm'r of Soc. Sec.*, No. 22-2721, 2023 WL 3479567, at *1 & n.* (3d Cir. May 16, 2023).   Moreover, while the SSA acquiesced to *Lively* and *Albright* within the Fourth Circuit, it has elsewhere maintained that ALJs are not required to consider a prior ALJ's findings. *Id.* at *2.  But, in rejecting the appellant's "novel form of preclusion," the court noted that "even if [it] adopted *Albright*'s rule, it would be inconsequential in Mattei's case" because "the ALJ did, in fact, 'consider[ ] the prior administrative law judge decision' and found it 'partially persuasive.'" *Id.* at *2 (alteration in original) (quoting the record).[10]

---

[10] It is worth noting that (at least until the Third Circuit's decision in *Mattei*) lower courts in the Third Circuit, including in *Mattei*, had found that "a previous ALJ's findings are relevant evidence to be considered along with all the other relevant evidence." *Mattei v. Kijakazi*, No. 21-1022, 2022 WL 3700910, at *1 n.1 (W.D. Pa. Aug. 26, 2022) (citing

The Ninth Circuit has gone yet a different way.  In *Chavez v. Bowen*, the court confronted the now familiar situation where a claimant was found to have the RFC for light work by one ALJ, turned 55 and reapplied, then a subsequent ALJ found the claimant had a greater RFC and could perform past work, thus denying the claim.  844 F.2d 691, 692 (9th Cir. 1988).  The decision of the second ALJ "made no reference to the findings of the first" ALJ.  *Id.*  According to the Ninth Circuit, however, "[t]he first [ALJ's] findings concerning the claimant's residual functional capacity, education, and work experience are entitled to some res judicata consideration in subsequent proceedings."  *Id.* at 694.  Indeed, "[p]rinciples of res judicata," the Ninth Circuit held, "made binding the first [ALJ's] determinations that the claimant had a residual functional capacity of light work, was of limited education, and was skilled or semi-skilled."  *Id.* at 694.  "Because the second [ALJ] failed to afford preclusive effect" to the findings of the first ALJ—which, given the claimant's attainment of age 55, would have made him "entitled to disability under the regulations unless he possess[ed] transferable work skills"—the second ALJ's "decision was not supported by substantial evidence."  *Id.*  The Ninth Circuit has similarly described the prior ALJ's findings as "creat[ing] a presumption that [the claimant] continued to be able to do light work."  *Lyle v. Sec. of Health & Hum. Servs.*, 700 F.2d 566, 568 (9th Cir. 1983).  Importantly, this rule cuts both ways: "A presumption of continuing non-disability arises from a prior ALJ's denial of disability benefits."  *Carter v. Kijakazi*, No. 21-55043, 2022 WL 193203, at *1 (9th Cir. Jan. 21, 2022) (citing *Chavez*, 844 F.2d at 693).

---

*Krokus v. Colvin*, No. 13-cv-389, 2014 WL 31360, at *1 n.1 (W.D. Pa. Jan. 2, 2014), *aff'd*, *Mattei*, No. 22-2721, 2023 WL 3479567.

Central to these cases, *Mattei* excepted, is the idea that a prior ALJ's findings can be "important and probative" evidence of the claimant's condition. *Albright*, 174 F.3d at 477.[11]   That makes sense given that ALJs are "qualified and disinterested tribunal[s]" who see the evidence and hear the testimony firsthand. *Albright*, 174 F.3d at 477.   And when the periods being adjudicated are close in time, the claimant's condition will presumably be the same or similar in both adjudications.   *See Earley*, 893 F.3d at 934.   In such circumstances, principles of consistency and fairness suggest that like cases should have like outcomes—or, at the very least, that the findings of another neutral, reasoned adjudicator applying the same rules to similar facts are entitled to consideration.   *See id.* at 933.   This is all the more true when a court has reviewed the prior ALJ's findings and given them the judicial stamp of approval.   *See Lively*, 820 F.2d at 1392 & n.*.

That said, a prior ALJ's findings need not control the outcome in a second claim.   An ALJ is "entitled to weigh conflicting opinions and to make his [or her] own assessment of their credibility." *Brown*, 794 F.2d at 708-09.   And "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Schoenbohm v. FCC*, 204 F.3d 243, 246 (D.C. Cir. 2000).   For instance, the greater the time gap between the periods adjudicated by the ALJs, the less relevant the first ALJ's findings may be to the second ALJ's decision.   *See Albright*, 174 F.3d at 477.   That's

---

[11] District courts in other circuits have reached similar conclusions.   *See, e.g.*, *Brewer v. Kijakazi*, No. 20-cv-3226, 2022 WL 3591072, at *11 (E.D. La. July 7, 2022) (finding the subsequent ALJ erred by not considering a prior ALJ's determination because that determination had "some *res judicata* effect"); *Cameron v. Berryhill*, 356 F. Supp. 3d 186, 197–98 (D. Mass. 2019) (finding that a subsequent ALJ did not err by considering a prior ALJ's findings in denying the claim when the time periods considered by the ALJs were separated by "only three months"); *Baker v. Astrue*, No. 5:07-CV-1174, 2008 U.S. Dist. LEXIS 123953, at *20 (N.D. Ala. Mar. 27, 2008) ("[T]he findings of the earlier ALJ that Ms. Baker had definite severe impairments and a RFC to perform light work as of May 22, 2002, is such an important and probative fact as to render the subsequent and contrary finding *one day later* unsupported by substantial evidence."); *Kendrick v. Sullivan*, 784 F. Supp. 94, 107 (S.D.N.Y. 1992) (finding that it "was error for ALJ Anyel to disregard the finding of ALJ Ashley that Almonte was limited to light work in the absence of new evidence at the second hearing that would support such a departure").

because "human health is rarely static" and is more likely to change over greater periods of time. *Earley*, 893 F.3d at 933; *see Rucker*, 92 F.3d at 495 (finding four years between the two claims to be too long for the first ALJ's findings to be relevant). Similarly, new or different evidence may support a different conclusion. This seems especially likely when the claimant is seeking a different finding the second time around. Such a claimant would—one hopes—submit new evidence to support that different finding. *See Earley*, 893 F.3d at 933. Just as like facts usually lead to like outcomes, different facts can lead to different outcomes. *See id.*

Putting all of this together in the context of this case, ALJ Ayer should have considered ALJ Emerson's contrary findings and should have explained why they were rejected. While substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" *Biestek*, __, U.S. at __,139 S. Ct. at 1154, "an ALJ cannot merely disregard" probative evidence that "does not support his conclusion,"*Martin v. Apfel*, 118 F. Supp. 2d 9, 13 (D.D.C. 2000); *see Lane-Rauth*, 437 F. Supp. 2d at 65 (An ALJ must "sufficiently explain[ ] the weight he has given to obviously probative exhibits." (quoting *Butler*, 353 F.3d at 999)). And the findings of another neutral, reasoned decisionmaker concerning a claimant's condition for a period close in time to the second adjudication are an example of such evidence. *See Albright*, 174 F.3d at 477–78; *Earley*, 893 F.3d at 933. The relevance of that evidence of course depends on the circumstances of the individual case. *See Biestek*, __ U.S. at __, 139 S. Ct. at 1157. But some written explanation is due from the second ALJ when he or she finds such a prior decision by an ALJ irrelevant or believes there is some other reasoned basis for its rejection. *See Brown*, 794 F.2d at 708; *Lane-Rauth*, 437 F. Supp. 2d at 65.

Applying those principles here, ALJ Ayer erred by failing to provide in his decision the reason those findings were rejected—assuming they were considered at all. ALJ Emerson issued

his decision on June 7, 2018.  ECF No. 9-3 at 16.  His decision was approved as being supported

by substantial evidence by this Court.  *See Harris v. Comm'r of Soc. Sec.*, No. 18-cv-2451, 2021

WL 3507684, at *7 (D.D.C. Apr. 15, 2021), *report and recommendation adopted*, 2021 WL

7448011 (D.D.C. Apr. 30, 2021).  And Section 405(h) made those findings final and "binding."

*See Clark*, 187 F. Supp. 3d at 84.  So, according to ALJ Emerson's findings, as of June 7, 2018,

Plaintiff's mental health impairments were severe, those impairments limited her RFC, and she

was incapable of performing her past work.  ECF No. 9-3 at 75–82.  Nevertheless, as of one day

later—June 8, 2018—ALJ Ayer found that Plaintiff's mental health impairments were *not* severe,

did *not* limit her RFC, and that she *could* perform past relevant work.  ECF No. 9-2 at 20–28.  Yet,

in making that decision, ALJ Ayer failed to explain why he did not find ALJ Emerson's contrary

findings persuasive; indeed, he made no mention of them at all.  The closest he came was acknowl-

edging that his RFC, which did not include the mental limitations imposed by ALJ Emerson, ap-

plied "for the period from June 8, 2018, the day after the prior final unfavorable decision."  ECF

No. 9-2 at 24.  But his implicit rejection of ALJ Emerson's findings is especially problematic

precisely because their decisions were separated by only a single day.  As in *Lively*, it is "utterly

inconceivable" that Plaintiff's condition had so improved from June 7 to June 8—literally over-

night—to justify ALJ Ayer's contrary findings without any explanation for that inconsistency.  *See*

*Lively*, 820 F.2d at 1392.  Human health is certainly variable, but it strains credulity to accept such

contrary findings as of one day later "without even a breath of explanation."  *See Brown*, 794 F.2d

at 708.  Perhaps ALJ Ayer found new evidence more persuasive, or perhaps he just weighed the

evidence differently than ALJ Emerson.  But the Court cannot be left to guess the reason for the

rejection of such probative contrary evidence.  *See id.*; *Lane-Rauth*, 437 F. Supp. 2d at 65.

What is more, ALJ Ayer considered evidence from the period adjudicated by ALJ Emerson.  Specifically, he considered, "by way of history," Plaintiff's mental health evaluations from January, March, April, and June 4, 2018.  ECF No. 9-2 at 20–21.  True, ALJ Ayer did not rely exclusively on this evidence and he also cited evidence from after ALJ Emerson's opinion.  ECF No. 9-2 at 21.  But it becomes even harder to accept this inconsistency when the two ALJs considered some of the same evidence to reach contrary conclusions about Plaintiff's condition from one day to the next.

The Commissioner does not argue that ALJ Ayer adequately addressed or considered ALJ Emerson's findings.  Instead, the Commissioner claims that "the ALJ was only required to evaluate the relevant period before him and provide a narrative explanation of how he considered the overall evidence and what evidence he relied upon to allow a subsequent reviewer to trace his reasoning." ECF No. 16 at 16.  This misses the mark.  ALJ Ayer was of course required to do those things.  But just as important as explaining "what evidence he relied upon," *id.*, is explaining probative contrary evidence he did *not* find persuasive.  *See Brown*, 794 F.2d at 708; *Lane-Rauth*, 437 F. Supp. 2d at 65.  Again, ALJ Ayer may have had good reason to reject ALJ Emerson's findings, but the Court cannot "trace his reasoning," ECF No. 16 at 16, for rejecting ALJ Emerson's findings when there is no reasoning to trace in his written decision.  *See Genuine Parts Co.*, 890 F.3d at 312; *Brown*, 794 F.2d at 708.  And the Court cannot speculate as to what ALJ Ayer's reasoning was—his decision must stand or fall on its own terms.  *See Chenery Corp.*, 332 U.S. at 196.

Finally, *Jones v. Barnhart*, cited by the Commissioner, is not to the contrary.  In fact, the Third Circuit in *Jones* explained, like the D.C. Circuit in *Brown*, that ALJs must provide "sufficient explanation" of their findings "to provide meaningful review of the step three determination." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  In *Jones*, the ALJ satisfied this requirement

by discussing *both* the evidence that he or she found convincing in determining that the claimant's impairment did not satisfy a Listing and the probative evidence that undercut that finding—there, evidence of "chronic obstructive and restrictive lung disease," including studies showing "moderately severe obstructive and restrictive defects."   *Id.* at 504–05.   But here, ALJ Ayer made no mention of ALJ Emerson's findings that Plaintiff's mental health impairments were severe, that those impairments restricted her RFC, and that she could not perform past relevant work.   Thus, even under the nonbinding standard that the Commissioner cites, ALJ Ayer's decision falls short.

### C.     That Error Was Not Harmless.

This Court cannot find that the error was harmless because, as Plaintiff pointed out at the hearing and in her briefs, she may be disabled as of her 55th birthday—June 11, 2020—if ALJ Ayer had adopted ALJ Emerson's findings.   ECF No. 9-2 at 44; ECF No. 9-5 at 7.   That would make her disabled before her disability insurance expired on September 30, 2020, ECF No. 9-2 at 18;[12] before the hearing with ALJ Ayer on March 10, 2021, *id.* at 17; and before ALJ Ayer issued his decision on June 16, 2021, *id.* at 30.   Indeed, the Commissioner has not argued that ALJ Ayer's failure to address ALJ Emerson's findings would be harmless if it was an error.

Had ALJ Ayer incorporated ALJ Emerson's findings—specifically, that Plaintiff's mental impairments were severe and that she was thus limited to simple, repetitive tasks with limited interaction with others, ECF No 9-3 at 10, 14—then Plaintiff would not be able to perform past work, as the VE testified at the hearing, ECF No. 9-2 at 53.   It was not until ALJ Ayer asked the VE about a person with Plaintiff's exertional RFC being limited to simple, routine tasks with limited social interaction that the VE testified that such a person would be unable to perform Plaintiff's

---

[12] *See* 20 C.F.R. § 404.131(b)(1) ("To become entitled to disability insurance benefits, you must have disability insured status in the first full month that you are disabled.").

past work. *Id.* Thus, those mental limitations appear to have been the difference between Plaintiff being able to perform her past work and not being able to do so. *See id.* And if Plaintiff was incapable of performing her past work, the analysis would have continued to step five to determine whether there was any work available in the national economy that Plaintiff could perform. *See* 20 C.F.R. § 404.1520(a)(4)(iv)–(v).

At that point, the outcome of Plaintiff's disability claim is more difficult to chart, but a finding of disability would certainly be possible. Plaintiff was of advanced age—55 or over—as of June 11, 2020, and was, according to ALJ Ayer, limited to light work. *See* 20 C.F.R. § 404.1563(e); ECF No. 9-5 at 7; ECF No. 9-3 at 10. The VE also testified in ALJ Ayer's hearing that someone with the mental limitations imposed by ALJ Emerson would not be capable of performing any skilled or semi-skilled work available in the economy. *See* ECF No. 9-2 at 53. If ALJ Ayer finds on remand that Plaintiff is also unable to perform her past work—as ALJ Emerson found—the application of the Medical-Vocational Guidelines may well lead to a finding of disability as of her 55[13] birthday. *See* 20 C.F.R. pt. 404, Subpt. P, App'x 2, § 202.00(c) ("[F]or individuals of advanced age who can no longer perform vocationally relevant past work and . . . who have only skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity, . . . the limitations in vocational adaptability represented by functional restriction to light work warrant a finding of disabled."). Accordingly, the Court cannot find that ALJ Ayer's failure to address ALJ Emerson's findings was

---

[13] As noted, *see supra* note 6, when a claimant has additional limitations beyond those contemplated by the Grids, the ALJ cannot rely on the Grids alone to establish nondisability; the testimony of a VE is required. *Smith v. Bowen*, 826 F.2d 1120, 1122 (D.C. Cir. 1987). Here, Plaintiff has additional limitations beyond being restricted to light work. But the Grids can serve as a useful framework for determining whether a claimant is disabled at step five even if the claimant has additional limitations. *See id.* ("The regulations provide that if the claimant has exertional and nonexertional limitations and is not disabled based on strength limitations alone, then the grids may 'provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations.'" (citing 20 C.F.R. 404, Subpt. P, App'x 2, § 200.00(e)).

harmless error.  For this reason, Plaintiff's claim must be remanded for the Commissioner to con-sider ALJ Emerson's findings.  *See Brown*, 794 F.2d at 709 (remanding a disability claim so that the SSA could consider the effect of evidence that it had errantly ignored).

On a final note, the Court emphasizes the narrowness of this decision.  While presented here with a case where the claimant wants the prior ALJ's findings to be sustained, it is worth remembering that this is a "rare case." *Albright*, 174 F.3d at 477.  In most cases, the claimant who reapplies for benefits wants the second ALJ to make a different finding from the first ALJ—one that leads to the conclusion that the claimant is disabled.  *Earley*, 893 F.3d at 934.  Ultimately, a fact-bound "case-by-case" inquiry dictates the result in this case, as it should under the substantial evidence standard.  *Biestek*, 139 U.S. at 1157.  The Court need not—and does not—find that ALJ Emerson's findings must be presumptively followed or accorded any particular weight.  Like all evidence an ALJ must consider, the facts and circumstances of the individual case must dictate the weight a subsequent ALJ attaches to the findings of a prior ALJ.  But, in this case, if the next ALJ finds them unconvincing—as he or she is entitled to do, assuming the ALJ's decision is supported by substantial evidence—the ALJ should explain why that is so.

## IV.    CONCLUSION

For the reasons stated above, the Court will enter an Order **DENYING** Defendant's motion for judgment of affirmance (ECF No. 16), **GRANTING IN PART** Plaintiff's motion for judgment of reversal (ECF No. 15) to the extent that it seeks remand to the Social Security Administration for further administrative proceedings, **DENYING IN PART** Plaintiff's motion to the extent that

it seeks reversal, and **REMANDING** this case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Date: July 11, 2023

_____

G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE